ston-Lake-Central. May I Your Honor? Please Mr. Steck, go ahead. May it please the Court, Philip Steck for the plaintiff's appellant. The plaintiff's high school lacrosse coaches, Jake McHerron and Mary Lou Vosburg, were terminated from employment and publicly accused of, for example, engaging in battered girlfriends. and being a poor role model for students. They seek to remedy an interference with their liberty interest in obtaining future employment because of the stigma they suffered from these and similar statements. Plaintiffs seek a name-clearing hearing in what is called a stigma-plus claim. At a name-clearing hearing, plaintiffs will seek to prove that the allegations against them are false so they can get a decision. which will enable them to obtain future employment free from the stigmatizing statements. With respect to the two elements of a stigma-plus claim, stigma means public disparagement. The stigmatizing statements in this case include being told to members of the community that the coaches had created a negative and hostile environment and that they had, that the players suffered battered girlfriend syndrome as a result of the coaches' conduct. To an employment clearinghouse run by the Board of Cooperative Educational Services, the defendants told the BOCES, which was available to 24 different school districts within the region, that the plaintiffs had issues as a role model, which is absolutely the death knell for teachers, you simply cannot get employed with such a label, that they were guilty of insubordination. That they do not respect adults and students. And this, what was said here as far as... I thought you were talking about the plus factor here, right? What's that? You're talking about the plus factor in a stigma-plus claim. Well, the plus is the termination of employment. Stigma is what I'm talking about now. Well, can I ask you about the plus part, though? Absolutely. So there's some question about refusal to rehire, whether that constitutes a plus that's necessary for the constitutional claim. And there seem to be some cases that suggest that there is that, that may satisfy that element. But anything in the context of a coach that is a part-time job and it's seasonal as well, and a substitute teacher. I mean, it may be a refusal to rehire in a full-time position might constitute that plus. But how about the circumstances here? Are there any cases that say refusal to rehire in circumstances similar to this could be the plus? Well, we certainly didn't cite any in our papers. I would say, however, that the facts of this case are somewhat indicate more than simply a refusal to renew a contract in the sense that the coaches were basically out in sum and substance before the school year ended. They were suspended with pay. Yes. Is that in itself a plus? I mean, they're not allowed to do their work, but they are getting paid. I would say not. However, I believe discovery would reveal that notwithstanding that formal statement, that they were in effect terminated. And, in fact, Coach McCarran, it is. Well, suppose, what would discovery reveal? Well, suppose discovery revealed that the school board, after looking at these allegations, said, look, these people are a headache. I don't even care whether it's true or not what these people say who are complaining about them. You know, we're just going to get new people next year. And in the meantime, and for now, we're just going to suspend them, but we'll pay them. How is that any different from suspending them with pay first and then coming to a conclusion later that they're not going to renew? In both cases, the two decisions are, for now you get paid, but don't come to work, and you're not going to be renewed. Of course, as a matter of labor law, they can do that. The problem arises when you stigmatize the people. They can make a decision, look, we don't like their coaching. We don't like their teaching. We're not going to renew their contract. It's the stigma and the plus, and the question is, you know, what is the plus here? And you responded to Judge Droney, I thought, by saying that the plus is not just non-renewal. It's non-renewal that was signaled by the suspension with pay earlier. So with respect to substitute teaching for Coach McCarran, that had nothing to do with the — That's a separate story. That's a separate story. Separate story. Had nothing to do with the administrative leave or the suspension with pay or whatever you want to call it. They just said, nope, you're terminated as a substitute teacher. Now, the case law refers to not only the possibility of termination of employment. The case law that Judge Droney was talking about indicates that any end of employment is enough. In an at-will employment situation, and this Court has repeatedly held, repeatedly, that the remedy for stigmatization in the course of at-will employment is the same situation. It is simply a, you can be terminated at any time. So our brief argues that there's actually no functional distinction between at-will employment and the expiration of a period of employment. In addition, these coaches did have some expectation of renewal, which was that, as I pointed out in the collective bargaining agreements, they had certain procedural rights, not substantive rights, to keep the position which were not followed. And this Court has referred to, in addition to discharge, as being a basis for the PLOS, but also the loss of some tangible right or interest. Let me ask you about procedural rights, too. Yeah. You've maintained that the Article 78 proceeding in the New York State courts would not be sufficient. But we've had a couple of cases. The Anemone case says that an Article 78 proceeding is a sufficient process. And then more recently, Licordo said that you could present evidence, you could have a hearing, there could be adjudication of facts. Why is the Article 78 proceeding not enough to guarantee the procedural protections of name-clearing here? I think there are two reasons. The first reason, I think the Supreme Court's decision in Nick clearly says otherwise. This issue of Article 78 and its relationship to 1983 has been around the district courts and this circuit for a long time. Tell me what Nick said that says the Article 78. So Nick says that you don't need to use a State remedy to vindicate a Federal right if your Federal right has been violated. Our position is when the name-clearing hearing was twice requested by our clients, that that's when the Federal right was violated. In their letter to this Court, the defendants say that they try to distinguish Nick by saying there was no pre-deprivation remedy, regardless of its procedural form, which would have adequately protected the Petitioner's rights in Nick. That's completely inaccurate. In Nick, there were parallel opportunities under State law that would have fully protected and vindicated the interests of the plaintiffs. The Supreme Court of the United States simply said you do not have to use them. You can use either or as long as your Federal right is violated. In further answer to this, to Judge Droney's question, in an Article 78 proceeding, there have been some cases where the Article 78 was used to determine, like, do you have a property interest in your employment? There are two cases discussed in our brief at length. One is the Siegel case where the plaintiffs were offered an administrative hearing and turned it down. That is not the case here. But also in the Giglio case, Article 78 was an appropriate method to determine whether someone had a property interest or not, and their rights flowed from that. And Article 78 is not an administrative hearing where the truth or falsity of things are dealt with. It is a special proceeding which is done on the papers. And if on the papers some issue of trial — What about if it said you can have a trial in Article 78? Well, Your Honor, I think I would rely on the Nick case. It's simply not true that you can have a trial in Article 78. There is a section in Article 78 that talks about a trial. But it's on a very narrow issue that might be necessary to resolve some dispute on the papers. The — that is — an Article 78 is not like the hearing that was afforded in the Siegel case, which was an administrative hearing where people were given full and fair opportunity to cross-examine witnesses and so forth on the underlying facts as to whether what was said about them is true, and therefore whether they should continue to bear the stigma or whether they should get a decision from the administrative hearing officer saying that, no, those comments were unjustified, and they can then take that to another employer and hopefully regain their rights for future employment. But I think the Nick case is very clear on the issue that you do not — if your Federal rights are violated, you do not have to use a State proceeding to vindicate them. Before you go — Sure, Your Honor. Are the plaintiffs here seeking damages or just a name-clearing hearing? So in the decisions of this Court, I believe it's — I didn't ask about the decisions of this Court. I asked what are you looking for. That's all I want to know first. So we are — as this has turned out, we would be looking for damages to cover the period between when the name-hearing clearing was denied and the name-clearing hearing was held, as the Patterson case of this circuit has said that we are entitled to. And by the way, that is absolutely not relief that can be obtained in an Article 78 proceeding. Okay. So my question then is, to the extent you're seeking damages, how does our recent Mudge decision affect that in terms of qualified immunity? Well, this case is far different from Mudge, I would say. For example, we now have the Nick case, which is involved. That's a decision in the United States Supreme Court. Wait, wait, wait, wait, wait, wait. You have that decision, but so did — so did Mudge, right? Or that's — The issues in Mudge are completely different than this particular case. In Mudge, there was an issue as to misconduct by the State of New York that caused other things to happen. There's a line of precedent in this area, which I think Mudge fits into, which is that the — if your loss — if your stigma is a result of a preexisting bad reputation, then there is no need for a name-clearing hearing. In Mudge, this Court held that the — that the stigma that Mr. Mudge was facing had to do with the employment issues came up. And I think this Court said that a — no one, based on the current law in this circuit, that the defendants wouldn't have any notice that they were violating the plaintiff's rights in Mudge. Here, things like what a stigma plus claim is, things like what constitutes termination of employment, things of all the nature of the issues in this particular case, such as whether stigma plus applies to at-will employment, these are all well-settled principles in the circuit. I think it — quite frankly, I think it's quite a — I thought quite a stretch to depart from these principles and hold that you need a property interest to get a stigma plus claim. If we had a property interest, for example — You wouldn't need a stigma plus claim. We wouldn't need a stigma plus claim. Look, this is a very low level of protection for my clients. The best they do out of all of this is to get a ruling from an administrative hearing officer that says these things are untrue, and that may help them get future employment. It may not. Thank you. Good morning. May it please the Court, my name is Pat Fitzgerald. I represent the defendants in this case. It's undisputed that there is no property interest in your coaching position. There is no property interest in being called as a substitute teacher, and that is important, because if there is a property interest, it's relevant in terms of whether somebody might have a pre-deprivation, right to some due process, or a post-deprivation, right to some due process. So when we're talking about liberty interests, and when somebody has a post-deprivation right to due process, which is what the plaintiffs are seeking here, they're not seeking any pre-deprivation remedy, it's absolutely correct that when you're at-will employment with a governmental employee is terminated, then if you also meet the stigma element of that type of request, you may have a 14th Amendment liberty interest claim. I keep on hearing plaintiffs' counsel referring to the fact that plaintiffs' employment was terminated. The plaintiffs' employment was not terminated. The record is abundantly clear that the plaintiffs' employment was not terminated in this case. Well, it expired and was not renewed. Well, it expired, Your Honor. There's actually nothing in the record to indicate that it was not renewed, because it just ---- But they're working there now? Were they offered a contract to bring them back? I mean, they're gone. That's why they're complaining. At the time the complaint and the amended complaint was filed in this case, which is the operative time, the only thing that had been changed was the termination of the position the following year. There is nothing in this record or alleged in this complaint that they were not rehired, because that decision had not been made. And that's important, and that also factors into Judge D'Agostino's ruling on the First Amendment claim as well, putting aside that this is quintessential speech on a matter of private concern, not public concern. She also notes there has not been any adverse action taken against the plaintiffs as a result of them commencing this lawsuit, because, in fact, no decision had been made at the time the second or the amended complaint was submitted to the district court with respect to any future coaching opportunity. Well, they didn't coach again, right? To my knowledge, they have not, Your Honor, but that's not in the record, or it's not appropriately in the record. They were not being put on the do-not-call list. Did that happen? Yes, because they — it's alleged in the complaint that they were not — that they were put on the do-not-call list. But the case law is abundantly clear that a substitute teacher has no interest in being called tomorrow or the next day or the day after that as a substitute teacher. So if a district makes a decision, a school district makes a decision to say, we're not going to call this teacher in for employment anymore, we have not altered any right of that teacher. And in the Mudge decision that was decided last week, the court articulated yet again the importance of the plus element of a substitute teacher and that there has to be a state-imposed alteration of a plaintiff's rights. And not calling somebody as a substitute teacher again and deciding not to call them again has been established over and over again that I'm not altering any right because they have no right to be called as a substitute teacher in the first place. There are circumstances where refusal to rehire would constitute the plus. You seem to say no in your brief, but — Well, it's interesting, Your Honor. You asked Plaintiff's Counsel that question and he couldn't point to any cases where that has actually been the situation in anything remotely similar to this. Again, I don't think that that's before this Court because there's nothing in the amended complaint. Do you want me to point to some of the cases? And I can distinguish all of those cases, Your Honor, where that has been discussed by other courts. Paul v. Davis strongly suggests that the Supreme Court would say a refusal to rehire a government employee satisfies the plus. In this circuit, additional cases, the Corcoran case, Algorin case, they all say that failure to rehire can be the plus. Do you disagree with that? In all of those cases, Your Honor, they're vastly different than this case. Those are cases, for instance, where a teacher is appointed to a probationary term that is a four-year probationary term and rolls over every year. So I have an expectation on June 30th that on July 1 I'm going to continue to be reemployed and my contract is going to be renewed and there's no break. No change in my status, no anything like that, okay? And that is not this case. And the plaintiffs talk about that fact in their brief, that once the lacrosse season is over, it's over and done with. I forget the exact term they use, but the time has gone by. Fast forward another year, a district may or may not make a decision to rehire that coach, different coaches, additional coaches, whatnot, and those are vastly different than the situation in any cases where any court, whether in this circuit or another circuit, has found that somehow the failure to rehire can give rise to a due process liberty interest claim. In fact, in Mudge, citing Roth, this Court said it would stretch the liberty interest concept too far to suggest that a person is deprived of liberty when he is simply not rehired in one job, but remains as free as before to seek another. Ruth was about the property interest and said there is no liberty interest in that simply in the non-rehiring, and it distinguished a case where there was a stigma and something that would be different. And then Davis came along and very clearly indicated in Davis that stigma alone is not enough. Building upon Roth's kind of dealing with dicta in Roth in that regard, and making it very clear about the plus element of the stigma plus claim, hence the progeny of all the decisions of this Court. But you would agree that the plus element can be something less than what would independently support a property interest, otherwise there would be no point to that separate cause of action. So, Your Honor, in the employment context, okay, when you're talking about the Burnt Hills-Boston Lake Central School District, the rights they have to affect the plaintiff's protected interests are extremely limited. We're an employer, they're an employee. We can either fire them or not fire them. We are not, in the other cases where you're talking about plus might mean something different, the State, where the State is putting the plaintiff's name on a central registry for sex offenders, and it's a clearinghouse for any employer in the State that has to hire this employee. Or the State Department of Education or the New York City Department of Education who revokes a license, thus effectively barring, okay, that plaintiff from future employment. Those are State-imposed burdens on the plaintiff's employment in those cases. Kennedy. Aren't they arguing, at least with respect to the substitute teacher story, that that's exactly what the defendants did, was to put him on a list and notify not just that they're not going to hire him, but put him, when they made that decision, they also gave reasons and put him on a do-not-call list that was a centrally maintained list, as I understand it. And as Plaintiff's Counsel points out, that might be relevant to the stigma claim, but it's not relevant to the plus claim, because we don't have the power as a school district to do anything other than affect the employment of the plaintiffs at our school district. We don't have any other control and any other respect with them. Otherwise, every time that we stigmatize somebody, one would say that, okay, you've also hurt their chances for employment. The courts have rejected that analysis. But you contacted BOCES to put them on the do-not-call list. Because that's where our substitute teachers come from. We have to tell the BOCES, don't send this person to our school district. We don't want them to substitute here. Pardon me? Other districts could look at that, just like they could look at a newspaper article. Not relevant to the plus, maybe relevant to the stigma claim. Okay? There's nothing about that that prevents some other school district from hiring the plaintiffs. That's why, as Plaintiff's Counsel referenced, it's relevant to stigma, but it is not relevant to plus. Help us, or help me in particular. What would it take, hypothetically, in your view, to establish plus? What would be a plus situation? Taking the hypothetical would be roughly the same situation. What would be required, in your view, to reach that test? So, Your Honor, when we're talking about an employer, okay, in a situation like this, I think that the plus requires termination of employment. Okay? It requires some affirmative act of termination of employment. Had they had employment, which could be terminated, and had they been terminated, that would have been adequate for meeting the test of stigma plus. So if the facts in this case were such that we terminated their employment while they were coaches, we said, we're not suspending you and paying you, which the case law deals with that. It's not a termination. But instead, see you later. You're fired. For the rest of the season, goodbye. That may have given rise to a stigma plus case. That's not this case. Let me ask you about this Mudge case, which, of course, came down so recently. Let me give you an opportunity for a minute or so to just tell us what your view is of this case and whether and how it helps you. It's interesting because I represented the school district in that case, and which the claims against the school district were dismissed several years ago. So I'm familiar with that case. I think that that case. That may be why I'm asking. I think that that case is relevant really for two reasons. I already cited the portion of that case that quotes Roth, which I think is important that the Second Circuit recognized that only a week ago. And also in that case, the Second Circuit once again reiterated the stigma plus element, putting emphasis on the plus, that stigma is not enough, and we can't confuse the two. So in these respects, you think that the Mudge case is, as far as you're concerned, on all fours, as they say? I don't. It's a little bit of a different context, Your Honor. The remaining claim in that case is not against an employer. It's against the State Education Department. So the ability of the State Education Department to affect the rights of the plaintiff is different than my client. My client, as I said, has extraordinarily limited, an extraordinarily limited ability to affect the rights of the plaintiff. All we were is an employer. All right. Mr. Stick. You reserved time. Maybe you could. Yes, Your Honor. Maybe you could address Mike and if you would just take a moment for Mudge. I would like to very much. First of all, what this Court said in Mudge is the fact that the communication by the State Ed Department went to one single employer. And this Court said that the subsequent newspaper article was about the prior suspension of Mr. Mudge's employment. This is a case where both the termination of employment and the stigmatizing statements, which were directed outside the particular employer in question, this case is much different from Mudge. Again, in Mudge, this Court said that the mere transmission of information, inaccurate information, to one employer was not enough. It had to be broader. So this case presents the broader scenario. And on that point, I want to refer this Court back to this Court's decision in Donato. In Donato, which involved a teacher, the only difference between Donato in this case is that in Donato the teacher was a probationary teacher. A probationary teacher may have expectations. A probationary teacher, however, can be fired in essence with some notice at any time, any time during the three-year period. There are some procedural protections in state law, but any time. Here, Mr. Mudge was immediately terminated from his substitute teaching and the he was a member of the substitute teacher's bargaining unit, which gave him certain procedural rights, which he was not given. So the fact is that Mudge was terminated as a substitute teacher. His termination as a coach came later. Judge Droney talked about the case law saying that the two things are equivalent. But in Donato, that teacher just faced fairly routine performance criticisms. Basically, the teacher was not able to maintain control in the classroom, and that was threatening. The safety of the students and their learning opportunities, there was no statement outside the district other than what went into the personnel file, as in this case, which went out in two instances, one to the, but most importantly to the BOCES, attaching all these negative statements to these people. Anyone in the State of New York can see this. Anyone in the State of New York could see that their positions were vacant. And that was announced before there was an appointment for the following year. So we believe, and I think we've detailed this in our brief, that these folks actually were terminated in sum and substance even before. Are they eligible to apply for those announced vacancies? Actually, they did apply. Okay. And in prior years, in prior years, for ten years. Would that constitute a termination if basically the situation is we're going to consider people competitively for this position? Well, that is not what they said, but in point of fact, again, going to the collective bargaining agreement, you have to give the people notice so they can attempt to address these things. That's what the collective bargaining agreements say. That was not done. These people were terminated, and there's a very good district court decision on page 23 of our brief, Shen versus Shanghai Cafe, where the court said that, well, you know, there was an argument that the people weren't really terminated, but the court said, hey, when you tell someone you're no longer welcome on the campus of this school, even when your kids are going there, I think it's without question that you are terminated from employment. And this concept that somehow a substitute teacher has no expectation of coming in for another day. In this particular school district, that was not the case because the school district had provisions to address that with notice, and McCarran just said, you're done. Thanks very much. Thank you, Your Honors. We appreciate your argument.